UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

KIM-CHEE LLC and
YUP CHAGI INC. d/b/a MASTER GORINO'S
PIL-SUNG TAE-KWON-DO,

                                Plaintiffs,

- v -

PHILADELPHIA INDEMNITY INSURANCE
COMPANY;
PHILADELPHIA CONSOLIDATED HOLDING
CORP. a/k/a PHILADELPHIA INSURANCE
COMPANIES;

                                Defendants.

———————————————————————

COMPLAINT

Civ. Action No.:

_____

JURY TRIAL DEMANDED

Plaintiffs Kim-Chee LLC and Yup Chagi Inc. d/b/a Master Gorino's Pil-Sung Tae-Kwon-Do ("Plaintiffs" or "Gorino" or the "Insured"), by and through their attorneys, Duke Holzman Photiadis & Gresens LLP, as and for their Complaint against Defendants Philadelphia Indemnity Insurance Company ("PIIC") and Philadelphia Consolidated Holding Corp. a/k/a Philadelphia Insurance Companies ("Philadelphia") (each of the foregoing being a "Defendant" and collectively the "Defendants"), state and allege as follows:

<u>INTRODUCTION</u>

1.      The instant matter arises from contracts of insurance entered into between Plaintiffs and Defendants.

2.      The insurance policy issued by Defendants to Plaintiffs are generally known as commercial property insurance, and include, without limitation: (a) policies identified by Defendants as "Commercial Lines Policy"; and (b) "Businessowners Special Property Coverage Form" [including, but not limited to, Form BP 00 02 12 99].

3.      Defendants Philadelphia and/or PIIC issued and delivered to Plaintiffs an insurance policy bearing the policy number PHBOP016731 (the "Policy").

4.      A copy of the Policy is attached hereto as *Exhibit A*.

5.      The Policy is an "all risk" insurance policy and, as such, provides coverage for physical loss of property resulting from any cause unless the loss is "Excluded" or "Limited."

6.      The Policy does not contain an exclusion or limitation expressly addressing losses caused by or related to a virus.

7.      Defendants have stated that the Policy does not provide Plaintiffs with insurance coverage benefits for losses due to and/or relating to the novel coronavirus (the "Virus"), the disease caused by the Virus–COVID-19 ("CV-19"), and/or the actions of various civil authorities in response to the Virus and/or CV-19 ("CA Orders"), including that there is no coverage for business interruption, the loss of business income, extended business income, loss based on the actions of civil authorities to limit access to property, property loss, extra expense loss, and dependent property loss (collectively "BI Losses").

8.      The Businessowners Special Property Coverage Form, under "Duties in the Event of Loss," directed and required:

**a.**  You [Plaintiffs] must see that the following are done in the event of loss of or damage to Covered Property:

. . .

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.

Commonly referred to as a "Sue and Labor" provision, policyholders are entitled to coverage for reimbursement of costs and expenses incurred as a result of complying with such provision. ("SL Losses").

9. Defendants have denied coverage to Plaintiffs for BI Losses, SL Losses, and other damages arising from and related to the Virus, CV-19, and the CA Orders.

10. Defendants breached their insurance contracts with Plaintiffs by failing to provide the coverage and benefits as identified herein.

## PARTIES

11. Plaintiff Kim-Chee, LLC is a New York limited liability company with its principal place of business located in the State of New York, County of Erie, at 839 Niagara Falls Blvd., Amherst, New York 14226 (the "Premises").

12. Plaintiff Yup Chagi Inc. is a New York corporation with its principal place of business located in the State of New York, County of Erie, at the Premises.

13. Upon information and belief, Defendant Philadelphia is a business corporation organized under the laws of the State of Pennsylvania and registered and duly authorized to transact insurance business in the State of New York.

14. Upon information and belief, Defendant PIIC is a stock insurance company of Defendant Philadelphia, organized under the laws of the State of Pennsylvania and registered and duly authorized to transact insurance business in the State of New York.

## JURISDICTION

15. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1332(a) and pursuant to the principles of pendant and supplemental jurisdiction under 28 U.S.C. § 1367.

16. Personal jurisdiction exists over Defendants because Defendants conduct business in the State of New York and in this District, has caused and continues to cause damage to Plaintiffs in this District, and/or otherwise avails itself of the privileges and protections of the laws of the

State of New York, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

17.     Venue is proper in this district under 28 U.S.C. §1391(b) because Defendants conduct business in this district, (b) a substantial part of the events or omissions giving rise to the claims occurred in this District, and (c) Defendants caused damage to Plaintiffs in this District.

FACTS

A.     <u>The Policy</u>

18.     The Policy, was issued in consideration of a premium which was paid to, received, and retained by Defendants.

19.     The Policy covered certain losses occurring between June 5, 2019, and June 5, 2020, including losses occurring at the Premises.

20.     The Policy identified Defendant PIIC, One Bala Plaza Suite 100, Bala Cynwood, PA 19004 as the Insurer.

21.     Plaintiffs are identified in the Policy as the "Named Insureds."

22.     The Policy, provides coverage on an "all risk" rather than specified peril basis.

23.     "All risk" insurance policies cover all risks of loss except for risks that are expressly and specifically excluded.

24.     Under paragraph "A. Coverage" at subparagraph 3 "Covered Causes of Loss" of the Businessowners Special Property Coverage Form, the Policy provides coverage for all "Risks of Direct Physical Loss unless the loss is: **a.** Excluded in Section **B.,** Exclusions, or **b.** Limited in Paragraph **A.4**. Limitations . . . ." (Emphasis in original).

25.     Under paragraph "**A. COVERAGE**" at subparagraph "**5.  Additional Coverages**" of the Businessowners Special Property Coverage Form, the Policy provides coverage for, among

other things: "f. Business Income" (including "Extended Business Income"); "g. Extra Expense"; and "i. Civil Authority".

26.     Plaintiffs have suffered BI Losses that are expressly covered under **"5. Additional Coverages"** and other provisions of the Policy.

27.     Under paragraph "**E. PROPERTY LOSS CONDITIONS**" at subparagraph "**3. Duties in the Event of Loss or Damage**" of the Businessowners Special Property Coverage Form, the Policy provides: "in the event of loss of or damage to Covered Property" insureds must "[t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim."

28.     Plaintiffs complied with the insureds' obligations under Duties in Event of Loss or Damage and incurred SL Losses.

29.     The "Exclusions" do not reference, restrict, limit, or preclude coverage for losses resulting directly or indirectly from a virus.

30.     The "Limitations" do not restrict, limit or preclude coverage for losses resulting directly or indirectly from a virus.

B.     Absence of "Exclusion of Loss due to Virus or Bacteria" Endorsement

31.     Since in or before 2006, the insurance industry, including Defendants, have been aware of the risks of damage to property, physical loss of property, and damage to business operations associated with viruses and bacteria.

32.     In or about 2006, the insurance industry adopted a standard form policy endorsement for commercial property policies commonly known as "Exclusion of Loss Due to Virus or Bacteria." This has otherwise been referred to as Multistate Form Filing CF-2006-OVBEF

and/or endorsement CP 01 75 07 06 (New York) or CP 01 40 07 06 (collectively, the "ISO Virus Exclusion").

33.     Defendants are members of the insurance industry and subscribe to, have access to, rely on, and adopt ISO forms.

34.     Defendants are, and at all relevant times hereto were, aware of the Virus Exclusion.

35.     Defendants chose to issue insurance policies without the Virus Exclusion despite their express and actual knowledge of the existence of the same.

36.     The intended purpose of the ISO Virus Exclusion is to eliminate virus and bacteria related losses from coverage under all risk insurance policies.

37.     Upon information and belief, Defendants adopted an exclusion endorsement for virus and bacteria that is the same as, or substantially similar in sum and substance to, the ISO Virus Exclusion.

38.     Upon information and belief, Defendants have issued a "New York – Exclusion of Loss Due to Virus or Bacteria" (Commercial Property CP 01 78 08 08) (the "Philadelphia Virus Exclusion") endorsement to certain of their insureds.

39.     Annexed hereto as *Exhibit B* is a copy of the Philadelphia Virus Exclusion.

40.     Defendants had the opportunity to include the ISO Virus Exclusion and/or the Philadelphia Virus Exclusion (collectively the "Virus Exclusion") in Plaintiffs' Policy.

41.     The Policy does not contain the Virus Exclusion.

42.     The Policy does not contain an exclusion substantially the same or similar to the Virus Exclusion.

43.     Defendants have issued the Virus Exclusion, the Philadelphia Virus Exclusion, or an exclusion substantially the same or similar to the Virus Exclusion, to other commercial insureds in the State of New York.

44.     Defendants had knowledge of the existence of virus exclusions, including that contained in the Philadelphia Virus Exclusion, at the time and/or before they issued insurance policies to Plaintiffs.

45.     Defendants actually issued insurance policies containing virus exclusionary language to certain policyholders at the time and/or before they issued insurance policies to Plaintiffs.

46.     Defendants made the affirmative decision to omit virus exclusionary language, including that contained in the Philadelphia Virus Exclusion, when issuing the Policy to Plaintiffs.

47.     The Policy does not exclude or limit coverage for losses experienced by Plaintiff Gorino directly or indirectly from the Virus, CV-19, or the CA Orders.

C.     Plaintiffs' Covered Loss

48.     Plaintiffs' employees, customers, and/or vendors: (a) were exposed to the Virus, (b) tested positive for the Virus and/or CV-19, (c) were otherwise diagnosed as infected with the Virus and/or having CV-19, (d) exhibited symptoms consistent with infection by the Virus and/or having CV-19, and/or (e) were instructed by civil authorities and/or their medical providers to self-isolate, quarantine, and/or suspend normal business operations.

49.     Plaintiffs' Premises, personal property, and dependent property:  (a) were exposed to the Virus, (b) had the Virus or persons with CV-19 present at their respective locations, and/or (c) could no longer be used or operated due to orders of civil authorities issued in response to the Virus and CV-19.

50.     Property in the immediate area of Plaintiffs' Premises: (a) was exposed to the Virus, (b) had the Virus on surfaces therein, and/or (c) could no longer be used or operated due to orders of civil authorities issued in response to the Virus and CV-19.

51.     The Virus is ubiquitous, such that it exists everywhere, including, without limitation, Plaintiffs' Premises and property in the immediate area of Plaintiffs' Premises.

52.     The Virus was present at, in, throughout, and on Plaintiffs' Premises and property within one mile of Plaintiffs' property.

53.     The Virus causes physical loss of and/or damage to property.

54.     The presence of the Virus constitutes direct physical loss of and/or damage to property.

55.     At least one governmental entity has acknowledged that the Virus causes physical loss of and/or damage to property.

56.     Annexed hereto as *Exhibit C* are copies of The City of New York, Office of the Mayor, Emergency Executive Orders, issued by Mayor Bill de Blasio (the "NYC Executive Orders").

57.     The NYC Executive Orders expressly state: "WHEREAS, this order is given because of the propensity of the virus to spread person to person and *also because the virus physically is causing property loss and damage*[.]" (Ex. C (emphasis added)).

58.     The presence of the Virus and the resulting direct physical loss of or damage to property (both at Plaintiffs' Premises and at property in the immediate area of the same) and persons with CV-19 caused direct physical loss of or damage to the covered property under the Policy as well as to property in the immediate area of such covered property.

59.     The presence of the Virus and persons with CV-19 caused civil authorities throughout New York to issue orders requiring the suspension of business and/or use of commercial property, including the property of Plaintiffs as well as property in the immediate area of such covered property.

60.     The CA Orders prohibited access to the covered properties as a result of the damage and the ongoing and continuous loss and damage resulting from the Virus.

61.     The CA Orders include, but are not limited to, the following Executive Orders of New York State Governor Cuomo:

      a.     On March 7, 2020, by Executive Order 202, Governor Cuomo declared a Disaster Emergency for all of New York State because of CV-19;

      b.     On March 18, 2020, by Executive Order 202.6, Governor Cuomo reduced all non-essential businesses' on-site workers by 50%, effective at 8:00 p.m. on March 20, 2020;

      c.     On March 19, 2020, by Executive Order 202.7, Governor Cuomo reduced all non-essential businesses' on-site workers by 75%, effective at 8:00 p.m. on March 21, 2020; and

      d.     On March 20, 2020, by Executive Order 202.8, Governor Cuomo reduced all non-essential businesses' on-site workers by 100%, effective at 8:00 p.m. on March 22, 2020.

62.     Plaintiffs substantially ceased business operations in March 2020, as a result of the Virus, CV-19, and the CA Orders.

63.     Plaintiffs suffered a direct physical loss of or physical damage to Covered Property, including the BI Losses, as a result of the Virus, CV-19, and the CA Orders ("Loss").

64.     The Loss constitutes an occurrence under the Policy.

65.     Plaintiffs are entitled to be covered and indemnified under the Policy for the Loss.

D.     Loss Reporting to BI Losses to Defendants

66.     Upon information and belief, Defendant Philadelphia controlled, directed, and/or participated in the preparation of the Policy, the underwriting relating to the issuance of the Policy, and the claims intake, investigation, and administration under the Policy, including handling of claims arising out of or related to the Virus.

67.     The GORINO Policy contains multiple provisions demonstrating that the Philadelphia Insurance Companies—inclusive of Defendant Philadelphia—are jointly contracting with Plaintiffs, including, but not limited to: "The Philadelphia Insurance Companies value your privacy and _we_ are committed to protecting personal information that we collect during the course of _our business relationship with you_."

68.     Thus, in addition to Defendant Philadelphia being bound by traditional principles of agency, Defendant Philadelphia is an actual party to the insurance contract entered into with Plaintiffs.

69.     Upon information and belief, Defendant Philadelphia and all of its affiliates, including Defendant PIIC, all acted uniformly in their handling of CV-19 claims pursuant to and in accordance with the control and/or direction of Defendant Philadelphia.

70.     Defendant Philadelphia commissioned and manifested a desire for its affiliates, the members of "Philadelphia Insurance Companies, including Defendant PIIC (the "Affiliates"), to act on its behalf subject to Philadelphia's control and/or direction when writing and issuing policies, adjusting and investigating claims, and making coverage determinations.

71.     The Affiliates have actual and apparent authority to act on behalf of Philadelphia.

72.     The Affiliates in fact acted on behalf of Philadelphia and in Philadelphia's name with Philadelphia's express, implied, and apparent authority.

73.     The Affiliates consented to so act on behalf of Philadelphia.

74.     Defendant Philadelphia's statements, representations, and conduct communicated to Plaintiffs provided a reasonable belief and appearance that the Affiliates possessed the authority to, and were, acting on behalf of Philadelphia with regard to the insurance policies at issue.

75.     Defendant Philadelphia exercised control over the Affiliates by determining and issuing direction as to how policies, claims, investigations, and coverage determinations relating to the Virus, CV-19, and/or the CA Orders were to be handled.

76.     The Affiliates acts (including issuing the DFS Response (defined below), making coverage determinations, and issuing denial letters) were, in both form and substance, those of Philadelphia.

77.     Defendant Philadelphia and the Affiliates share and use the same logo(s).

78.     Defendant Philadelphia and the Affiliates share and use the same slogan(s).

79.     Defendant Philadelphia and the Affiliates share and use the same forms, including the DFS Response, ISO forms, policy forms, reservation of rights letters, and denial letters.

80.     Defendant Philadelphia and the Affiliates share the same underwriting department, such that the underwriting department underwrites claims for each Affiliate indiscriminately and indistinguishably.

81.     Defendant Philadelphia and the Affiliates share the same adjusters and examiners, such that the same individuals investigate, adjust, examine, and make coverage determinations on claims for each Affiliate indiscriminately and indistinguishably.

82.     Defendant Philadelphia and the Affiliates, and their employees, share the same office space.

83.     Defendant Philadelphia and the Affiliates use the same telephone numbers.

84.     Defendant Philadelphia together with PIIC and the other Affiliates operate phone lines, including 877-438-7459 and 800-765-9749, to report claims and/or losses under the Policy (the "Philadelphia Numbers").

85.     Upon information and belief, the Affiliates participate with Defendant Philadelphia in the operation of the Philadelphia Numbers for the reporting of claims and/or losses with respect commercial property insurance issued by the Defendants.

86.     Defendant Philadelphia and the Affiliates share and use the same marketing.

87.     Defendant Philadelphia and the Affiliates share and use the same website(s).

88.     Defendant Philadelphia together with PIIC and the other Affiliates developed and operated a website for reporting business income related claims related to the Virus: https://www.phly.com/Claims/AutoReportClaim.aspx (the "Philadelphia Website").

89.     Plaintiffs reported the Loss to Defendant via numerous methods, including the Philadelphia Website, e-mail, and/or through their agent.

90.     Defendant Philadelphia and the Affiliates share and use the same internal systems, including information technology ("IT") systems, phone systems, case management systems, and underwriting systems.

91.     The Affiliates and/or their employees request approval from Philadelphia for, and rely on Philadelphia's direction and control over, decision making authority, including settlement authority, coverage decisions, and claims handling practices.

92.     Defendant Philadelphia mandates that the Affiliates and their employees comply with the policies and procedures set forth by Philadelphia.

93.     The Affiliates entire business model is designed to assist and support Philadelphia.

E.      Uniform Practice to Deny Coverage for Losses related to the Virus

94.     Defendants Philadelphia and PIIC arbitrarily and wrongfully disclaimed coverage for Plaintiffs' Loss.

95.     Defendants contend that the commercial property policies issued by Philadelphia and PIIC in New York do not provide coverage for losses resulting from or related to the Virus, CV-19, or the CA Orders.

96.     Defendants' denial of coverage for losses related to or arising out of the Virus, CV-19, and the CA Orders was pre-determined and without regard to the individual circumstances of Plaintiffs or other insureds, including the presence of the Virus at the insured premises or property in the immediate area thereof.

97.     Defendants' denial of coverage for losses related to or arising out of the Virus, CV-19, and the CA Orders was pre-determined and applied uniformly to its insureds without regard to the actual policy provisions, or lack thereof, issued to each specific insured—*to wit* with no regard to the fact that it issued the Virus Exclusion to certain insureds and not to others, such as Plaintiffs.

98.     By letter dated March 10, 2020, the New York State Department of Financial Services directed all insurers that had issued commercial property insurance in New York to provide details on the business interruption coverage provided under such policies ("DFS Directive").

99.     A copy of the DFS Directive is attached hereto as *Exhibit D*.

100.    The DFS Directive explained that the purpose of this requirement was to ensure that insurance companies "explain to policyholders the benefits under their policies and the protections provided in connection with COVID-19" and required "each Insurer examine the policies it has issued and explain the coverage each policy offers in regard to COVID-19."

101.    Upon information and belief, Defendants Philadelphia and PIIC collectively either failed to send their insureds a response pursuant to the DFS Directive and/or prepared a template response to the DFS Directive irrespective of coverage provided for in the respective insureds' policies ("DFS Response").

102.    Plaintiffs, and upon information and belief other policyholders, were the intended beneficiaries of the DFS Directive and, accordingly, the intended recipients of any DFS Response letter.

103.    Upon information and belief, Defendants take the position that the Policy, and other similar commercial property policies they have issued in New York, including Commercial Lines Policies and Businessowner's Policies, do not cover losses arising from or relating to the Virus, CV-19, or the CA Orders.

104.    Upon information and belief, before Plaintiffs submitted notice of and information about their claims related to the Virus, CV-19, and the CA Orders, Defendants had determined not to afford coverage for any such claims.

105.    Upon information and belief, when making the determination not to provide coverage for the Virus, CV-19, and the CA Orders, Defendants had actual knowledge that they had thousands of impacted policyholders in New York.

106.    To the extent DFS Response letters were sent, upon information and belief, Defendants mailed the DFS Response letters in batches due to the large number of policyholders.

F.    Coverage Denial for Losses related to Virus, CV-19 and CA Orders

107.    Defendants denied coverage to Plaintiffs and other policyholders for losses related to the Virus, CV-19 and/or the CA Orders.

108.    By letter dated July 10, 2020, Defendants Philadelphia and PIIC issued a written coverage denial to Plaintiffs ("Coverage Denial"), noting:

> In order for the business income coverage to be triggered, there must be <u>direct physical damage</u> to covered property, caused by a Covered Cause of Loss. There is also no coverage under the Civil Authority provision, as that coverage also requires <u>direct physical damage</u> to property off premises, caused by a Covered Cause of Loss, which prevents access to your property.

(Emphasis in original).

109.    A copy of the Coverage Denial is attached hereto as *Exhibit E*.

110.    Upon information and belief, each and every denial letter sent by Defendants to their insureds relating to the Virus, CV-19, or the CA Orders was the same in form and substance to the Coverage Denial.

111.    Defendant PIIC, upon information and belief at the direction of Defendant Philadelphia, has refused to make payment to Plaintiffs for damages resulting from the Loss which constitutes a breach of the Policy.

112.    Defendant PIIC's refusal to cover the Loss is erroneous and unsupported by the plain language of the Policy.

113.    As such, Defendant PIIC owes Plaintiffs insurance coverage and benefits under the Policy for the Loss, and there is no valid basis for its refusal to issue the same.

114.    Plaintiffs continue to be damaged by Defendant PIIC's refusal to issue the full amounts due and owing under the Policy.

115.    Defendants have denied coverage to Plaintiffs and other policyholders for losses related to the Virus, CV-19, and/or the CA Orders based on their policy interpretation as set forth in the DFS Response, the "Coverage Decision Details", and/or documents substantially similar thereto.

<u>FIRST CAUSE OF ACTION</u>
Breach of Contract and Declaratory Relief

116.    Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth and incorporated herein.

117.    Plaintiffs sustained a physical loss of property, BI Losses, SL Losses, and damages as a result of a covered cause of loss under the Policy.

118.    Covered Causes of Loss under the policies issued by Defendants to Plaintiffs include physical loss of property resulting from the Virus, CV-19, and/or the CV Orders.

119.    Defendants had a duty under the Policy to provide coverage for BI Losses, SL Losses, and damages resulting from a covered cause of loss.

120.    Plaintiffs duly notified Defendants of its claim under the Policy, including for business income coverage.

121.    Defendants have refused to pay Plaintiffs' BI Losses, SL Losses, and damages.

122.    Defendants have refused to pay BI Losses, SL Losses, and damages arising from or relating to the Virus, CV-19, and/or the CA Orders.

123.    Defendants' failure and refusal to make payments to Plaintiffs for the BI Losses, SL Losses, and other damages constitutes a breach of the Policy.

124.    Defendants' failure and refusal to make payments to Plaintiffs for BI Losses, SL Losses, and damages pursuant to the terms of the policies constitutes a breach of contract.

125.    Defendants' conduct has been unreasonable.

126.    Defendants have unreasonably obstructed and prevented Plaintiffs from receiving prompt payment for the insurance benefits they are entitled to under the Policy.

127.    Defendants breached their duty and obligations of good faith and fair dealing.

128.    Plaintiffs have been damaged by Defendants' wrongful conduct, including without

limitation suffering extra-contractual consequential damages as a result of Defendants' failure to act promptly and in good faith.

129.     It was reasonably foreseeable and contemplated by the parties, at the time the Policy was issued and/or renewed, that the failure to properly investigate a loss/occurrence and the failure to promptly provide coverage and pay insurance benefits under the Policy would negatively and adversely affect a policyholder's business operations, including causing delays thereto, thereby forcing Plaintiffs to incur additional business interruption losses, attorneys' fees, and litigation related expenses.

130.     Plaintiffs have been damaged by Defendants' wrongful conduct, including that they have sustained foreseeable extra-contractual consequential damages, including business interruption losses, attorneys' fees, and litigation related expenses.

131.     As a result of Defendants' breach and wrongful conduct, Plaintiffs are entitled to judgment providing declaratory relief of their rights under the Policy, determining that the presence of the Virus causes physical loss of or damage to property as a matter of law.

132.     As a result of Defendants' breach and wrongful conduct, Plaintiffs are entitled to judgment providing declaratory relief of their rights under the Policy, determining that Defendants are liable to Plaintiffs for breach of contract, and that Plaintiffs have been damaged and are entitled to judgment against Defendants in an amount to be determined at trial, but not less than $100,000.00, plus interest.

<u>SECOND CAUSE OF ACTION</u>
New York General Business Law § 349

133.    Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth and incorporated herein.

134.    Defendants' statements in the DFS Response sent to policyholders were inaccurate and misleading.

135.    Upon information and belief, Defendants DFS Response included the express representation that coverage considerations depend on the particular facts and circumstances presented by each case, as well as policy provisions and individual coverages that may be part of each specific policy.

136.    Defendants did not make coverage determinations based on the particular facts and circumstances presented.

137.    Defendants made a uniform decision to deny all claims arising from the Virus, CV-19, and/or the CA Orders irrespective of the factual circumstances or policy provisions of individual policyholders.

138.    Upon information and belief, Defendants' made the uniform decision to deny all claims arising from the Virus, CV-19, and/or the CA Orders irrespective of the factual circumstances or policy provisions of individual policyholders before issuing the DFS Response.

139.    Defendants expressly misrepresented to their policyholders that coverage decisions would be made on a case-by-case basis given the factual circumstances or policy provisions of individual policyholders.

140.    Defendants' instructions to insurance agents and policyholder representatives that the coverages under its policies do not apply in the case of a virus were inaccurate and misleading.

141.    Defendants' inaccurate and misleading statements were relied on by policyholders and induced them to refrain from filing claims with Defendants.

142.    Defendants' failure to reasonably investigate the BI Losses and SL Losses and their refusal to pay insurance benefits through the present has, at the least, been in reckless and/or grossly negligent disregard of their obligations under each Policy issued to Plaintiffs.

143.    Defendants' actions are consumer oriented inasmuch as the Policy consists of standard policy forms created, maintained, and issued by Defendants as a group.

144.    Defendants' actions are consumer oriented inasmuch as the disclaimer letter issued to Plaintiffs consisted of a generic, pre-determined analysis that all claims relating to the Virus, CV-19, and the CA Orders were denied.

145.    Defendants pre-determined that as a general rule their standard form policies of insurance issued to insureds in New York State simply do not afford coverage for losses stemming from the Virus, CV-19, and the CA Orders, irrespective of the fact that the policies do not contain a Virus Exclusion.

146.    Illustrating the pre-determined nature of Defendants' coverage decisions is the fact that did not delineate between policyholders that were issued the Virus Exclusion and those that were not,  so that the disclaimer letters may be generated in a mass-produced, streamlined manner.

147.    Upon information and belief, each of the Defendants has received claims arising from or related to the Virus, CV-19, and the CA Orders from other insureds with policies that are the same as, or substantially similar to, the Policy.

148.    Upon information and belief, each of the Defendants has issued disclaimer letters that are the same as, or substantially similar to, the disclaimer letter that was issued to Plaintiffs in this case.

149.    Defendants' conduct in pre-deciding their coverage position for all, or substantially all, claims from insureds in New York State stemming from the Virus, CV-19, and the CA Orders was materially misleading.

150.    Defendants, by their agents and employees, have perpetuated and continued perpetuating a scheme by which its insureds are deprived of the full benefit of their policies, regardless of the fact that the Plaintiffs', and similarly situated policy holders', Policy does not contain the Virus Exclusion or any exclusions referencing virus-related losses.

151.    Upon information and belief, Defendants have instituted a practice, policy, or procedure by which Defendants intend to deny all, or substantially all, claims stemming from the Virus, CV-19, and the CA Orders.

152.    Defendants' practice, policy, or procedure was surreptitiously and purposefully made without notice or disclosure to Defendants' customers, potential customers, or the public at large, and indeed made despite express representations to the public to the contrary.

153.    Defendants' practice, policy, or procedure of not covering claims stemming from viruses is not disclosed within the subject insurance policies, because the policies do not contain the Virus Exclusion or a similar exclusion for viruses, despite the fact that Defendants are familiar with the Virus Exclusion.  Therefore, Plaintiffs and the public at large have been misled in a material respect.

154.    Defendants' practice of denying all, or substantially all, claims stemming from the Virus, CV-19, and the CA Orders was not disclosed to its policyholders until after they had submitted a claim under a policy. Therefore, Plaintiffs and the public at large who have obtained such policies from the Defendants have been misled in a material respect.

155.    The aforementioned public-oriented conduct exercised by Defendants is a regular business practice, policy, or procedure.

156.    Defendants' aforesaid practice, policy, or procedure is willful, intentional, and malicious with the ultimate intent and effect of depriving its insureds of the scope and amount of coverage for which they paid and bargained.

157.    The aforesaid actions of the Defendants constitute a violation of § 349 of the New York General Business Law for which Plaintiffs are entitled to treble damages up to the sum of $1,000.00 per violation, plus reasonable attorneys' fees.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully requests that the Court:

a.    Entering judgment on the First Cause of Action in favor of Plaintiffs as follows:

      1.    Determining and declaring that the Virus causes, and the presence of the Virus constitutes, direct physical loss of or damage to property;

      2.    Determining and declaring that losses sustained by Plaintiffs arising from and relating to the Virus, CV-19, and/or the CA Orders are insured losses covered under the Policy issued by Defendants;

      3.    Determining and declaring that Defendants are, jointly and severally, obligated to pay the full amount of BI Losses, SL Losses, and other coverage benefits provided for under the Policy issued to Plaintiffs with respect to losses arising from or relating to the Virus, CV-19, and/or the CA Orders; and

      4.    Determining liability in favor of Plaintiffs against Defendants, jointly and severally, for breach of contract and awarding damages for losses covered under the Policies in an amount to be determined at trial, but not less than $100,000.00, plus interest.

b.    Entering judgment on the Second Cause of Action in favor of Plaintiffs against all Defendants, jointly and severally, in an amount to be determined at trial but not less than treble damages up to the sum of $1,000.00 per violation, plus interest and reasonable attorneys' fees;

c.    Ordering Defendants to pay the legal fees of attorneys' fees and costs of suit;

d.    Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

e.    Ordering such other and further relief as may be just and proper.

<u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury on all issues of fact and damages claimed in the foregoing complaint.

Dated:   Buffalo, New York
August 24, 2020

DUKE HOLZMAN PHOTIADIS & GRESENS LLP

s/ *Christopher M. Berloth*

By:   _____

Christopher M. Berloth
Thomas D. Lyons
*Attorneys for Plaintiff*
*Kim-Chee LLC & Yup Chagi Inc. d/b/a*
*Master Gorino's Pil-Sung Tae-Kwon-Do*
701 Seneca Street, Suite 750
Buffalo, New York 14210
Tel: (716) 855-1111
cberloth@dhpglaw.com
tlyons@dhpglaw.com