IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Kim-Chee LLC and Yup Chagi Inc. d/b/a Master Gorino's Pil-Sung Tae-Kwon Do,**<br><br>Plaintiffs,<br><br>v.<br><br>**Philadelphia Indemnity Insurance Co., Philadelphia Consolidated Holding Corp. a/k/a Philadelphia Insurance Companies,**<br><br>Defendants. | Case No. 1:20-cv-01136 |

**REPLY[1] IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT PURSUANT TO RULE 12(b)(6)**

---

[1] As set forth in Defendants' Response to Plaintiffs' Motion to Exceed Page Limits, ECF No. 18, Plaintiffs' filed a 45 page Response Brief without leave to do so. Defendants have requested that the Court deny Plaintiffs' Motion to Exceed Page Limits and allow Defendants 14 days to respond to Plaintiffs' conforming brief. *See id.* Nevertheless, in an abundance of caution, Defendants file this Reply to Plaintiffs' Response Brief in accordance with the Local Rules.

28179076.v1

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Plaintiffs Have Not Alleged Physical Loss or Damage. | 1 |
| II. | The Absence Of The Virus Exclusion Is Irrelevant. | 4 |
| III. | Plaintiffs' Reliance On *Studio 417* and *Blue Springs Dental Care* Is Misplaced and Contrary to the Weight of Authority. | 5 |
| IV. | Plaintiffs Have Not Pled Facts That Would Establish Civil Authority Coverage. | 8 |
| V. | Plaintiffs Do Not State A Claim Under Section 349. | 10 |
| VI. | Plaintiffs Cannot State a Claim against Philadelphia Holding. | 10 |

28179076.v1

I.   **PLAINTIFFS HAVE NOT ALLEGED PHYSICAL LOSS OR DAMAGE.**

The Policy[2] clearly requires Plaintiffs to establish "physical loss or damage" to property. Although Plaintiffs contend that "physical loss" includes loss of use of the Covered Property,[3] the overwhelming majority of courts to address similar COVID-19 business income claims have interpreted similar policy language as a matter of law, finding that "physical loss" to property requires actual alteration to specific property. *See e.g., Henry's La. Grill,* No. 20-cv-02939-TWT, 2020 WL 5938755, at *4-5 (N.D. Ga. Oct. 6, 2020) (interpreting "direct physical loss of or damage to" property to require "a change in the insured property resulting from an external event rendering the insured property, initially in satisfactory condition, unsatisfactory."); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20-cv-2160, 2020 WL 5630465, at * 2 (N.D. Ill. Sept. 21, 2020) (interpreting "direct physical loss" to unambiguously require[] some form of actual, physical damage to the insured' premises to trigger coverage); *Mudpie, Inc. v. Travelers Casualty Insurance Company of America*, No. 20-CV-03213-JST, 2020 WL 5525171, at *5 (N.D. Cal. Sept. 14, 2020) (holding as a matter of law, that insured's mere inability to occupy its storefront did not trigger coverage, and insured had not pled any facts to show a physical force "induced a detrimental change in the property's capabilities."); *Pappy's Barber Shops, Inc. v. Farmers Frp., Inc.*, No. 20-CV-CAB-BLM, 2020 WL 5500221, at *5 (S.D. Cal. Sept. 11, 2020) (rejecting attempts to

---

[2] All capitalized terms have the meaning set forth in PIIC's Motion to Dismiss. *See* Mot. to Dismiss ("Motion"), ECF No. 12-7.

[3] The Policy language, like that of any other contract, should be interpreted following "the ordinary rules of contract interpretation." *Coney Island Auto Parts Unlimited, Inc. v. Charter Oak Fire Ins. Co.*, 619 F. App'x 28, 29 (2d Cir. 2015) (applying New York law and citing *Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F.Supp.2d 381, 386 (S.D.N.Y.2008)). The Court should "'give effect to the intent of the parties as expressed in the clear language of the contract.'" *Id.* at 29-30 (quoting *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)). That the Policy does not specifically define "direct physical loss or damage" does not create ambiguity. *See Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 880 F.3d 64, 69 (2d Cir. 2018) ("In the absence of guidance from the policy language, courts ask whether a body of law or an established custom or usage provides a definition.").

"substitut[e] temporary impaired use or diminished value for physical loss or damage" or "circumvent the plain language of the Policy by emphasizing its disjunctive phrasing."); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 1:20-CV-275-JB-B, 2020 WL 6163142, at *5 (S.D. Ala. Oct. 21, 2020) (holding a "reasonable insured would not understand the policy language to cover Plaintiff's purely economic losses incurred" from the loss of use of property).[4]

Here, Plaintiffs merely allege that government-issued orders have restricted Plaintiffs' use of the Covered Property. But "Plaintiff[s'] inability to use its property was not caused by an unsound and or unhealthy condition of the property itself, which necessitated repair, rebuilding, or replacement." *Hillcrest,* 2020 WL 6163142, at *8.

Nevertheless, Plaintiffs' Response Brief argues that their claim arises from the presence of COVID-19 on the Covered Property, citing several paragraphs from the Complaint. *See* ECF No. 17-26 at 27. Those paragraphs, however, contain only vague, conclusory allegations. They do not

---

[4] *See also Diesel Barbershop, LLC v. State Farm Lloyds,* No. 20-CV-461, 2020 WL 4724305, at *6-7 (W.D. Tex. Aug. 13, 2020) (holding insurer "cannot be held liable to pay business interruption insurance" for COVID-19 related business losses "as there was no direct physical loss"); *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB, (Ingham County, MI Circuit Ct.), Tr. of July 1, 2020 Hearing 23:19-24:18, ECF No. 12-4 (converting defendant's summary judgment motion to a motion to dismiss and granting defendant's motion because "there's no factual development that could possibly change the fact that the complaint is complaining about the loss of access or use of the premises . . . [s]o, there's no factual development that could possibly change . . . that those things do not constitute the direct physical damage or injury that's required under the policy"); *Turek Enters., Inc., v. State Farm Mut. Auto. Ins. Co.*, et. al, No. 20-11655, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020) (interpreting "direct physical loss" to "unambiguously" and "plainly require[] Plaintiff to demonstrate some tangible damage to Covered Property"); *Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581, at *9 (S.D. Fla. Aug. 26, 2020) (plaintiff's claim that orders restricted use of insured property cannot "plausibl[y]" state a claim because plaintiff "merely suffered economic losses – not anything tangible, actual, or physical"); *see also Mama Jo's Inc. v. Sparta Ins. Co.*, No. 823 Fed. App's 868, 879 (11th Cir. Aug. 18, 2020) (recognizing that a structure that merely needed "to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical'" (citations omitted)); *Boxed Foods Co. v. California Capital Ins. Co.*, Case No. 20-cv-04571-CRB (N.D. Cal. Oct. 26, 2020) (dismissing plaintiffs' complaint, holding the unambiguous virus exclusion bars coverage); *Seifert v. IMT Ins. Co.*, No. 0:20-cv-01102-JRT-DTS, 2020 WL 6120002, at *4 (D. Minn. Oct. 16, 2020) ("[I]f a complaint does not plead facts alleging some actual contamination or damage to property to a neighboring property, then the complaint does not state a plausible claim to relief"; "governmental action prohibiting the use of property, by itself, is not enough").

2

28179076.v1

contain any facts identifying when, where, or how COVID-19 entered the Covered Property.  *See id.*  Instead, Plaintiffs pleaded only that certain property was "exposed" to COVID-19, "could no longer be used or operated due to orders of civil authorities," *see* ECF No. 1, ¶ 49, and that the "presence of the Virus constitutes physical loss of and/or damage to property."  *See* Compl., ¶ 54.  Conclusory allegations[5] and speculation regarding the presence--or future presence--of the virus will not do.  *See Rubin v. State Farm. Mut. Auto. Ins. Co.*, No. 10-cv-1651, 2011 WL 61175, at *2 (W.D. Pa. Jan. 7, 2011) (The court "is not bound to accept as true a legal conclusion couched as a factual allegation.") (quoting *Iqbal*, 129 S.Ct. at 1950); *see also Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) ("[t]he mere presence of asbestos, *or the general threat of future damage from that presence*, lacks the distinct and demonstrable character necessary for first-party insurance coverage.") (emphasis added).

Although Plaintiffs contend that COVID-19 *has the potential* to cause physical loss or damage to property, *see* Response at pg. 4, they did not allege facts showing that it *has* caused physical loss or damage to the Covered Property. Indeed, even if Plaintiffs had pled facts showing that COVID-19 entered the Covered Property, they must also plead that it caused physical loss or damage while it was there.  Plaintiffs have not, and cannot, cite any factual allegations describing how COVID-19 *physically* impacted the Covered Property, as they must to trigger coverage.[6]  For this independent reason, their claims fail.

---

[5] For instance, rather than citing specific factual allegations describing physical loss or damage, Plaintiff's Response Brief repeatedly cites to legal conclusions in the Complaint alleging that COVID-19 can establish, or has established physical loss or damage.  These conclusions are devoid of any facts specific to Plaintiffs or the Covered Property.

[6] And even if Plaintiffs had made such allegations, they would not trigger coverage because any impact to the Covered Property could be remedied by cleaning it.  *See Mama Jo's Inc.*, 823 Fed. App'x at 879 ("direct physical loss" requires actual change to property that requires repair or replacement, not merely cleaning); *Universal Image Prods., Inc. v. Federal Ins. Co.*, 475 F. App'x 569, 573-74 (6th Cir. 2012) (finding that contamination could be cleaned and thus did not constitute physical damage).

**II.     THE ABSENCE OF THE VIRUS EXCLUSION IS IRRELEVANT.**

Plaintiffs argue that the absence of a specific Virus Exclusion in the Policy establishes that their loss is covered.  It does not.  *See Rose's 1, LLC v. Erie Ins. Exchange*, No. 2020 CA 002424 B, 2020 WL 4589206, at *5 (D.C. Super. Aug. 06, 2020) (rejecting insured's argument that "unlike some similar insurance policies, their policies do not include a specific exclusion for pandemic-related losses" because "even in the absence of such an exclusion, Plaintiffs would still be required to show a 'direct physical loss.'").  As discussed above, the underlying Policy coverage language requires Plaintiffs to show it experienced physical loss or damage to trigger coverage.  *See* Policy at pgs. 24, 25, & 27.  Where, as here, the insured fails to do so, coverage is not triggered and the exclusions are irrelevant.  For that reason, courts throughout the country have dismissed COVID-19 claims without reference to the virus exclusion where, as here, the insured fails to allege facts establishing "physical loss or damage." *Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581, at *9 (S.D. Fla. Aug. 26, 2020) (holding emergency orders that forced closure of plaintiff's business do not state a claim because there was no actual harm); *Turek Enters., Inc.*, *v. State Farm Mut. Auto. Ins. Co.*, et. al, No. 20-11655, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020) (dismissing plaintiff's claims because plaintiff failed to allege any "tangible damage to Covered Property" under plaintiff's policy); *Pappy's Barber Shops, Inc. v. Farmers Frp., Inc.*, No. 20-CV-CAB-BLM, 2020 WL 5500221, at *4-5 (S.D. Cal. Sept. 11, 2020) (rejecting attempts to "substitut[e] temporary impaired use or diminished value for physical loss or damage" or "circumvent the plain language of the Policy by emphasizing its disjunctive phrasing."); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, No. 20-CV-2939, 2020 WL 5938755, *6 (N.D. Ga. Oct. 6, 2020) (dismissing COVID-19 claim for failure to plead "direct physical loss of or damage to" property where insured failed to allege that "a change in the insured property" caused alleged loss); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 1:20-CV-275-JB-B, 2020 WL 6163142, at *5 (S.D.

Ala. Oct. 21, 2020) ("A reasonable insured would not understand the policy language to cover Plaintiff's purely economic losses incurred" as a result of loss of use of property).

Nevertheless, Plaintiffs argue that inclusion of the Virus Exclusion in other policies indicates that losses caused by a virus *can* trigger coverage under the "physical loss or damage" provision in the Policy. *See* ECF No. 17-26 at 24. Specifically, Plaintiffs ask the Court to "reject Defendants' claim that presence of COVID-19 is not, and cannot cause, physical loss or damage to the covered property as a matter of law." *See* ECF No. 17-26 at 37.

PIIC, however, does not argue (and the Court need not decide) whether COVID-19 *can* cause physical loss or damage. Instead, PIIC argues only that Plaintiffs have not alleged facts showing that COVID-19 *has* triggered coverage here. To the contrary, as discussed above, coverage exclusions are only relevant where the insured has otherwise established coverage. Plaintiffs have not done so here and the presence (or absence) of a virus exclusion is meaningless.

### III.   PLAINTIFFS' RELIANCE ON *STUDIO 417* AND *BLUE SPRINGS DENTAL CARE* IS MISPLACED AND CONTRARY TO THE WEIGHT OF AUTHORITY.

*Studio 417, Inc. v. The Cincinnati Ins. Co.*, No. 20-cv-03127, 2020 WL 4692385 (E.D. Mo. Aug. 12, 2020), and *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 20-CV-00383-SRB, 2020 WL 5637963 (W.D. Mo. Sep. 21, 2020), were decided by the same District Court Judge, and turned on the plaintiffs' allegations that COVID-19 had actually "attached to and deprived Plaintiffs of their property[.]" *Studio 417*, 2020 WL 4592385 at 8; *Blue Springs Dental*, 2020 WL 5637963 *4 (plaintiffs had alleged that "COVID-19 physically attached itself to their dental clinics, thereby depriving them of the possession and use of those insured properties").

Here, by contrast, the Complaint contains no such allegation. As discussed above, the paragraphs upon Plaintiffs cite in their Response Brief contain legal conclusions and speculative, generic allegations regarding the nature of COVID-19 generally. *See* ECF No. 17-26 at 27. Thus,

5

28179076.v1

unlike the insureds in *Studio 417*, Plaintiffs do not allege that their loss was caused by COVID-19 having "attached to" the Covered Properties.

Moreover, *Studio 417* and *Blue Springs Dental*, which do not control here, are contrary to the vast majority of decisions to have addressed COVID-19 business interruption claims. *See e.g., Rose's 1, LLC v. Erie Ins. Exchange*, No. 2020 CA 002424 B, 2020 WL 4589206, at *2 (D.C. Super. Aug. 06, 2020) (granting defendant's early motion for summary judgment because plaintiffs could not show a "direct physical loss" caused by COVID-19); *Gavrilides Management* 18-20 (dismissing plaintiff's complaint because it did not "allege any physical loss of or damage to the property" and the Complaint's allegations merely indicated "a loss of business due to executive orders shutting down the restaurants for dining…due to the COVID-19 threat"); *The Inns By the Sea v. California Mutual Insurance Company*, Case No. 20-CV-001274 (Aug. 6, 2020 Cal. Sup. Ct.) (dismissing complaint where county closure orders were not issued in response to direct physical damage to property, but merely to ensure safety of citizens and mitigate against future loss), ECF No. 12-3.[7]

---

[7] *See also Turek Enters., Inc., v. State Farm Mut. Auto. Ins. Co.*, et. al, No. 20-11655, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020) (dismissing plaintiff's claims because plaintiff failed to allege any tangible damage under plaintiff's policy); *Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581, at *9 (S.D. Fla. Aug. 26, 2020) (holding emergency orders that forced closure do not cause actual harm); *see also Mama Jo's Inc. v. Sparta Ins. Co.*, No. 18-12887, 2020 WL 4782369, at *8 (11th Cir. Aug. 18, 2020) (finding as matter of law that plain meaning of "direct physical loss" required that physical damage be actual); *Seifert v. IMT Ins. Co.*, __ F. Supp. 3d __, 2020 WL 6120002, at *4 (D. Minn. Oct. 16, 2020) ("[I]f a complaint does not plead facts alleging some actual contamination or damage to property to a neighboring property, then the complaint does not state a plausible claim to relief"; "governmental action prohibiting the use of property, by itself, is not enough"); *Harvest Moon Distributors, LLC v. Southern-Owners Ins. Co.*, No. 6:20-cv-01026-PGB-DCI (M.D. Fl. Oct. 9, 2020) (allegations claiming spoliation of beer after customer refused beer order because it closed due to COVID-19 not a covered cause of loss because plaintiffs' operations were not suspended; governing policy did not expressly exclude losses from pandemic, but losses still not covered); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, No. 8:20-cv-1605-T-30AEP , 2020 WL 5791583, at *5 (M.D. Fl. Sept. 28, 2020) (dismissing complaint, holding "no business income coverage and no civil authority coverage because the Amended Complaint fails to allege facts describing how the Property suffered any actual physical loss or damage. It is also apparent that any amendment would be futile under these circumstances.").

6

Indeed, in *Social Life Magazine, Inc. v. Sentinel Ins. Co.*, No. 20-cv-3311-VEC, (S.D.N.Y.), a District Judge in the Southern District of New York denied an insured's motion for injunctive relief. *See Sentinel,* Tr. May 24 Hearing, attached hereto as **Exhibit A**. The Court, interpreting New York law, recognized that COVID-19 does not cause physical loss, which supports Defendants' position. The Court commented that:

> [Coronavirus] "damages lungs. It doesn't damage printing presses.
> . . . .
>
> That is what has caused the damage is that the governor has said you need to stay home. It is not that there is any particular damage to your specific property.
> . . . .
>
> There is nothing about the governor's order that prohibits a small business person or a big businessperson from going into their office to pick up mail or water the plants."

Ex. A, 5:3-4, 8:16-18, 13:17-20.

The other cases Plaintiffs cite are similarly inapposite because, unlike here, they involved physical (even if microscopic) alterations to insured property. *See Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399 (1st Cir. 2009) (chemical odor that permeated building and caused headaches); *Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002) (asbestos); *Motorists Mutual Ins. Co. v. Hardinger*, 131 F. App'x 823 (3d Cir. 2005) (whether "the functionality of the [insured's] property was nearly eliminated or destroyed, or whether their property was made useless or uninhabitable" by e-coli, a source "unnoticeable to the naked eye."); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010) *aff'd* 504 F. App'x 251 (4th Cir. 2013) (insured's home rendered uninhabitable by toxic gasses released from drywall); *Gregory Packaging, Inc. v. Travelers Property Cas. Co.*, 2014 WL 6673934 (D.N.J. 2014) (E-coli present at premises); *Cooper v. Travelers Indem. Co. of Illinois*, 2002 WL 32775680 (N.D. Cal. 2002) *aff'd* 113 F. App'x 198, 202 (9th Cir. 2004) (E-coli present at premises); *Columbiaknit Inc. v*

*Affiliated FM Ins. Co.*, 1999 WL 619100 (D. Or. 1999) (noxious odor that would "develop either an odor or mold or mildew"); *Mellin v. Northern Security Ins. Co., Inc.*, 167 N.H. 544 (N.H. 2015) (carbon monoxide levels in building rendered it uninhabitable); *Matzner v. Seaco Ins. Co.*, 9 Mass. L. Rptr. 41 (Mass. 1998) (carbon monoxide); *Sentinel Management Co. v. New Hampshire Ins. Co.*, 563 N.W. 2d 296 (Minn. 1997) (vapors from methamphetamine lab had infiltrated property and had to be removed); *Farmers Ins. Co. of Oregon v. Trutanich*, 123 Or. App. 6 (Or. 1993) (vapors caused by methamphetamines lab); *Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34 (Colo. 1968) (gasoline accumulated under property, infiltrating and saturating it, rending use of the building unsafe and uninhabitable).

### IV. PLAINTIFFS HAVE NOT PLED FACTS THAT WOULD ESTABLISH CIVIL AUTHORITY COVERAGE.

The Civil Authority Coverage requires Plaintiffs to establish that a direct physical loss prohibited access to the Covered Property "due to direct physical loss of or damage to property, other than the [Covered Property]." *See* Policy 26.  Thus, Plaintiffs must show that 1) the orders they rely on were issued as a result of damage to property, 2) the damage was caused by direct physical loss, and 3) the civil authority orders *prohibited* access to the Covered Properties. Plaintiffs' have pled facts establishing none of these elements.

First, as discussed above, neither the Orders nor the Complaint identify any property that was damaged as a result of a direct physical loss.  Plaintiffs rely exclusively on speculation that the virus, because it is allegedly easily transmittable and hard to detect, *may have been* located on other property.  *See* ECF No. 17-26 at 17 (discussing COVID-19 transmission).  But speculation will not do.  *See Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (plaintiff must plead facts that establish a claim for relief that is "plausible on its face"); *see also Rose's 1, LLC,* No. 2020-CA-002424 B, 2020 WL 4589206 (D.C. Super.

8

Aug. 6, 2020) (court found that plaintiffs' alleged losses were not "physical" because plaintiffs offered no evidence that COVID-19 was actually present on the insured properties at the time they were forced to close nor did the mayor's closure order have any effect on the material or tangible structure of the insured properties).

Moreover, despite Plaintiffs conclusory allegation that access to the Covered Property was *prohibited*, the Orders, which Plaintiffs attached to their Complaint, belie Plaintiffs' allegation. *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) ("where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true"). Contrary to Plaintiffs' allegations, the Orders merely prevent Plaintiffs from operating a gym at the Covered Property. *See* Emergency Executive Order No. 100 and No. 101, ECF No. 1-4. They did not prohibit Plaintiffs from using or accessing the Covered Property for another purpose.

Indeed, courts throughout the country have found that similar COVID-19 closure orders merely restricted (or in some cases prohibited) the insured's business operations. They did not prohibit *access* to the insured property, and thus do not trigger civil authority coverage. *See Sandy Point Dental, PC*, 2020 WL 5630465, at *3 (finding complaint did not alleged that COVID-19 caused direct physical loss to other property and that "while coronavirus orders may have limited plaintiff's operations, no order issued in Illinois prohibits access to plaintiff's premises); *Pappy's Barber Shops,* 2020 WL 5500221, at *6 (finding that orders that merely prohibited business from operating, but did not prohibit access to physical premises, did not trigger civil authority coverage under substantially similar provision.); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-CV-04423-AB-SK, 2020 WL 5938689, at *5 (C.D. Cal. Oct. 2, 2020) (restrictions on in-person dining did not constitute total loss of use or access; to the contrary,

9

despite government orders, insured always had "complete access" to property, though the type of services it could provide on that property were restricted). For this independent reason, Civil Authority Coverage does not apply.

## V. PLAINTIFFS DO NOT STATE A CLAIM UNDER SECTION 349.

When a claim under General Business Law §349 accompanies a breach of contract claim, the plaintiff must identify a separate and distinct harm caused by the violation of the statute. *Magee v. Paul Revere Life Insurance Co*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997). Otherwise, a plaintiff could convert any "garden variety" breach of contract cause of action into a claim under §349. *Magee*, 954 F. Supp. at 586. Plaintiffs' Complaint contains no facts alleging any independent injury. Nor does it allege facts showing that Defendants engaged in a materially misleading, consumer-focused practice that caused injury. *See Lava Trading Inc v. Hartford Fire Insurance Co*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004) (§349 proscribes (1) consumer-focused conduct that is (2) materially misleading and (3) causes injury). Here, Plaintiffs allege that PIIC failed to pay for a loss that is covered under the Policy. Plaintiffs' §349 claim must therefore be dismissed.

## VI. PLAINTIFFS CANNOT STATE A CLAIM AGAINST PHILADELPHIA HOLDING.

Plaintiffs' claim arises from the Policy. Philadelphia Holding is not party to the Policy, which speaks for itself. *See Amidax Trading Grp.*, 671 F.3d at 147 ("where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true"). Philadelphia Holding did not--and could not--breach a contract to which it is not a party and under which it therefore has no obligation to perform. *See Morrow v. Allstate Indem. Co.*, No. 5:16-CV-137 (HL), 2017 WL 1196441, at *12 (M.D. Ga. Mar. 29, 2017) (dismissing non-issuing defendants in an insurance class action on a motion to dismiss). For that reason independent reason, the claims against Philadelphia Holding should be dismissed.

Respectfully,

*/s/ Sharon Angelino*
Sharon Angelino, Esq.
*Local Counsel for Defendants,*
*Philadelphia Indemnity Insurance Co., Philadelphia Consolidated Holding Corp. a/k/a Philadelphia Insurance Companies*
665 Main Street
Buffalo, New York 14203
Telephone: 716-566-5400

Richard L. Fenton (admitted *pro hac vice*)
Dentons US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL  60606
Telephone:  312.876.8000
Facsimile:  312.876.7934

Jeffrey A. Zachman (admitted *pro hac vice*)
Dentons US LLP
303 Peachtree St., NE Suite 5300
Atlanta, GA  30308
Telephone:  404.527.4000
Facsimile:  404.527.4198

Dated:  October 29, 2020

11

28179076.v1